IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 15-cv-02568-MSK-KMT

TYLER CROW,

    Plaintiff,

v.

BOULDER COUNTY, COLORADO,
BOULDER COUNTY SHERIFF'S OFFICE'S OFFICE,
JOHN AND JANE DOES, whose true names are unknown, Boulder County Jail guards and deputies, individually,
DR. JEREMIAH KAPLAN, individually,
JOHN AND JANE DOES, whose true names are unknown, Boulder County Jail nurses, individually, and
ARAMARK CORRECTIONAL SERVICES, LLC,

    Defendants.

---

**OPINION AND ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to Motions for Summary Judgment (the "Motions") filed by Defendants Boulder County Sheriff's Office's Office (the "Sheriff's Office") and Dr. Jeremiah Kaplan (**#110**), and Defendant Aramark Correctional Services, LLC ("Aramark") (**#106**). The Court has also reviewed briefing submitted by Mr. Crow in opposition to the Motions (**#113, #114**), and the replies in support thereof submitted by the Sheriff's Office and Dr. Kaplan (**#116**) and Aramark (**#115**). The parties' Joint Motion to Exclude Expert Testimony Pursuant to Fed. R. Evid. 702 (**#108**) is also before the Court.[1]

---

[1] This motion is denied as moot in light of the resolution of the claims based on federal law and dismissal of those based on state law.

1

I.      **Jurisdiction**

Mr. Crow brings two claims under 42 U.S.C. § 1983 against the Sheriff's Office and Dr. Kaplan for deliberate indifference to his broken foot.[2] The Court exercises jurisdiction with regard to these claims pursuant to 28 U.S.C. § 1331.

Mr. Crow's other claims – negligent creation of a dangerous condition (against the Sheriff's Office), negligent operation (also against the Sheriff's Office), and violation of the Colorado Premises Liability Act (the "PLA") against Aramark – all arise under Colorado law. The Court exercises supplemental jurisdiction with regard to these claims pursuant to 28 U.S.C. § 1367.

II.     **Relevant Facts**

The following facts are undisputed or where disputed are viewed in the light most favorable to the nonmovant, Mr. Crow. More factual details are provided as necessary in the Court's discussion.

Mr. Crow was arrested for failure to appear on a warrant associated with a misdemeanor traffic offense, and held in the Boulder County Jail (the "jail") for much of November 2014. While detained, he was assigned to work with the kitchen crew. Part of the kitchen crew's duties were required to wash the kitchen floor and several dozen relatively large (4' by 8', and 25 pounds) traction mats. The detainee/inmates were required to pick up the traction mats, hose them off, and put them in a pile to keep the main kitchen floor clear for hosing.

---

[2]     Mr. Crow's deliberate indifference claim is premised on a violation of the Fourteenth Amendment rather than the Eighth Amendment because it involves conduct that occurred while he was held in custody prior to conviction (as opposed to post-conviction incarceration). *See Blackmon v. Sutton*, 734 F.3d 1237, 1244-45 (10th Cir. 2013); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

Mr. Crow was injured on November 30, 2014, at approximately 8:30 am. He had just deposited a mat in the pile and was returning to the work space, when he was forced to dodge another inmate carrying a mat in the opposite direction. He slipped, stepped on the pile of traction mats, caught his foot among the mats, then fell. This fall caused his foot to bend at an awkward angle creating intense pain. A cursory examination at the scene confirmed that his foot appeared to be broken. Mr. Crow was taken in a wheelchair to the jail medical clinic, and at approximately 8:45 am, examined him. The nurse noted swelling of his foot, and immediately put Mr. Crow on the jail's so-called "sprain/strain" protocol, which consisted of a medical wrap (an Ace bandage), crutches, ice packs (to be provided twice a day),[3] elevation, a lower bunk restriction, and the administration of 800 milligrams of ibuprofen twice a day.

The nurse also promptly notified the on-call physician, Dr. Kaplan, of Mr. Crowe's injury, and he ordered an x-ray. The x-ray was taken later that afternoon. A radiologist reviewed the scan about an hour-and-a-half after it was taken, and diagnosed a fracture in Mr. Crow's proximal second metatarsal bone. When Dr. Kaplan received the radiologist's report, he instructed the jail nursing staff to schedule an appointment for Mr. Crow with an orthopedic specialist, then increased Mr. Crow's ibuprofen dose to 600 mg three times a day and instructed the staff that he should continue to use ice and crutches and/or a wheelchair. At no point did Dr.

---

[3] There is some factual dispute as to whether Mr. Crow actually received all of the ordered ice packs during the relevant time period. He cites testimony stating that although the record reflects that he was offered and refused an ice pack on one occasion, he never actually made such a refusal. The Court notes that his cited testimony – that he never refused an ice pack – does not necessarily mean that he was never provided with one, as contemplated under the strain/sprain protocol (and as reflected in his treatment records). Furthermore, there is no dispute that twice-daily ice packs are indicated under that protocol, and it was at least ordered that Mr. Crow should be provided with that treatment. The Court will construe the evidence provided by the parties in Mr. Crow's favor and assume that the notation in the record that Mr. Crow refused an ice pack on a single occasion was mistaken. For the purposes of the Motions for Summary Judgment, that assumption does not affect the Court's ultimate analysis.

Kaplan examine Mr. Crow. The next morning after the injury, a jail nurse scheduled an appointment for Mr. Crow with an orthopedic specialist on December 3, 2014, two days hence.

Mr. Crow experienced significant pain between following the incident through the time of his appointment with the orthopedic specialist. He states that the prescribed ibuprofen was wholly ineffective. The record contains notes by the jail's nursing staff noted that his foot was very swollen during this interval. There also is some indication that fracture blisters were beginning to form by the morning of the December 3, 2014.

On December 2, 2014, Mr. Crow submitted a kite asking to see a doctor "for his broken foot and pain." The kite mentioned nothing about inadequacy of pain medication or the need for more. Jail staff responded that an appointment with a specialist had been scheduled, but consistent with jail security policies, he was not told precisely when.

The next day, December 3, Mr. Crow transported by jail staff to be examined by Dr. Mark Birmingham, an orthopedic specialist and podiatrist. Dr. Birmingham confirmed the fracture and placed Mr. Crow in a splint/boot. He directed that Mr. Crow should continue to use crutches, elevate his foot several times daily, apply ice, and take oral anti-inflammatory medication as needed. Dr. Birmingham recommended that Mr. Crow have a follow-up MRI. There is some evidence that Mr. Crow told Dr. Birmingham that he wanted narcotics because the ibuprofen was not working. Dr. Birmingham considered prescribing narcotics, but after consulting with the deputy who accompanied Mr. Crow to the appointment, decided against doing so due because of the risk that an inmate may misuse narcotics himself or herself, or that narcotics prescribed for one inmate may be (voluntarily or involuntarily) diverted to other inmates. There also is some evidence in the record that suggests that there was a protocol at the

jail to accommodate inmates who were prescribed narcotics, and that some inmates had received narcotics. After Mr. Crow was treated by Dr. Birmingham, he returned to the jail.

Two days later, Mr. Crow was released on bond. Following his release, Mr. Crow received continued treatment from Dr. Birmingham, who ultimately prescribed narcotic pain medication.

Mr. Crow contends that he suffered severe and permanent physical and psychological injury, including arthritis, a pronounced limp, chronic neck and back pain, and emotional injury as a result of the broken foot and what he believes to a lack of necessary treatment. He also says that as a result of the injury and the subsequent required medical treatment (*e.g.*, a cast for several months and heavy painkiller prescriptions), he was unable to work for nearly a year, and he seeks damages for that period of unemployment.

### III. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Thus, the primary question presented to the Court in considering a motion for summary judgment: is a trial required?

A trial is required if there are material factual disputes to resolve. As a result, entry of summary judgment is authorized only "when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). A fact is material if, under the substantive law, it is an essential element of the claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the conflicting evidence would enable a rational trier of fact to resolve the dispute for either party. *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

5

The consideration of a summary judgment motion requires the Court to focus on the asserted claims and defenses, their legal elements, and which party has the burden of proof. Substantive law specifies the elements that must be proven for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson*, 477 U.S. at 248; *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). As to the evidence offered during summary judgment, the Court views it the light most favorable to the non-moving party, thereby favoring the right to trial. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

Motions for summary judgment generally arise in one of two contexts – when the movant has the burden of proof and when the non-movant has the burden of proof. Each context is handled differently. When the movant has the burden of proof, the movant must come forward with sufficient, competent evidence to establish each element of its claim or defense. *See* Fed. R. Civ. P. 56(c)(1)(A). Presumably, in the absence of contrary evidence, this showing would entitle the movant to judgment as a matter of law. However, if the responding party presents contrary evidence to establish a genuine dispute as to any material fact, a trial is required and the motion must be denied. *See Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

A different circumstance arises when the movant does not have the burden of proof. In this circumstance, the movant contends that the non-movant lacks sufficient evidence to establish a *prima facie* case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party must identify why the respondent cannot make a *prima facie* showing; that is, why the evidence in the record shows that the respondent cannot establish a particular element. *See Collins*, 809 F.3d at 1137. If the respondent comes forward with sufficient competent evidence to establish a *prima*

*facie* claim or defense, then a trial is required. Conversely, if the respondent's evidence is inadequate to establish a *prima facie* claim or defense, then no factual determination of that claim or defense is required and summary judgment may enter. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

IV. **Analysis**

The Sheriff's Office and Dr. Kaplan move for summary judgment on all of the claims against them. With respect to each, the Sheriff's Office and Dr. Kaplan argue that Mr. Crow has failed to come forward with sufficient evidence to make a *prima facie* showing.

A. **Fourteenth Amendment Deliberate Indifference Claims**

Mr. Crow contends that he was misdiagnosed[4], should have been seen by a specialist sooner, should have been physically examined by Dr. Kaplan and that he did not receive adequate pain medication. This, in his view, constitutes deliberate indifference by the Sheriff's Office and Dr. Kaplan to his rights under the Fourteenth Amendment of the United States Constitution. On these claims he bears the burden of proof.

A prison official's deliberate indifference to the serious medical needs of an inmate is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005); *Shue v. Laramie Cnty. Detention Ctr.*, 594 Fed. App'x 941, 944-45 (10th Cir. 2014); (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Although Eighth Amendment's protections do not directly apply to pretrial detainees, the same protections are imposed by virtue of application of the Fourteenth Amendment. *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (quoting *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 307 (10th Cir.1985)). Detention center officials owe pretrial detainees

---

[4] Based on the x-ray, Dr. Kaplan diagnosed that Mr. Crow had a single fracture, whereas Dr. Birmingham, after reviewing an MRI report found multiple fractures.

7

the same standard of care that prison officials owe convicted inmates. *Blackmon v. Sutton*, 734 F.3d 1237, 1244 (10th Cir. 2013); *accord Barrie v. Grand Cnty.*, 119 F.3d 862, 868 (10th Cir. 1997).

To establish a *prima facie* claim that government officials acted with deliberate indifference to his serious medical need, Mr. Crowe must come forward with evidence sufficient to prove two elements – that the deprivation was sufficiently serious (the objective element) and that the governmental official acted with a sufficiently culpable state of mind.(the subjective element). *Perkins v. Kansas Dept of Corrections*, 165 F3d 803 (10th Cir 1999); *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000); *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006). The objective element is satisfied by a showing that the inmate's medical need was serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need is one that has been diagnosed by a physician and requires treatment or is so obvious that even a lay person would easily recognize the need for medical attention. *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999); *Swan v. Physician Health Partners, Inc.*, 212 F. Supp. 3d 1000, 1006 (D. Colo. 2016). The subjective element requires proof that government officials were aware of the medical need and the risk of harm it posed to the inmate, but were indifferent to or disregarded the risk by failing to take reasonable measures to abate it. *Sealock*, 218 F.3d at 1209.

1. **Objective Serious Medical Need**

The Sheriff's Office and Dr. Kaplan concede that Mr. Crow's broken foot was a serious medical need that caused extensive pain and required treatment,[5] but they argue that Mr. Crow

---

[5] The Court also notes that there is an abundance of case law establishing that broken or fractured bones are sufficiently serious to trigger a prison's duty to provide treatment. *See, e.g., Heidtke v. Corrs. Corp. of Am.*, 489 Fed. App'x 275 (10th Cir. 2012) (fractured arm bone); *Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134 (10th Cir. 2005) (fractured hip); *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) (broken foot).

has not come forward with sufficient evidence to show that the delay in sending him to see Dr. Birmingham resulted in substantial harm. Put another way, they contend that that there is no evidence showing that had Mr. Crow received more prompt treatment, his outcome would have different. The Sheriff's Office and Dr. Kaplan rely on *Oxendine v. Kaplan*, 241 F3d 1272 (10th Cir 2001) and *Mata v.Saiz*, 427 F3d 745 (10th Cir. 2005) for the proposition that "only if the delay results in substantial harm" is the objective test satisfied. (**#110**, p. 5). Their reliance on *Oxendine* and *Mata* for such proposition is misplaced.

Although *Oxendine* is often cited for the proposition that plaintiff mush show that delay in treatment caused harm in order to demonstrate an objective medical need, the Tenth Circuit neither adopted nor applied that standard in its decision. In *Oxendine*, an inmate severed his finger in his cell door. It was reattached by the doctor on call and the finger was examined by medical staff on a daily basis for several days. Although the finger was observed to be viable over the first few days, its condition deteriorated and "necrosis of the skin" was noted. Ultimately the amputated finger began to fall away from the living portion. During the entire period, the inmate implored medical personnel to send him to a specialist in order to "save" the amputated portion of the finger. Only after it was too late to save the amputated portion of the finger, was the inmate referred to a specialist. The Tenth Circuit found that the objective standard was satisfied by the combined allegations of the severed finger, botched reattachment, and worsening of the wound due to decaying tissue. The court did not need to address whether the inmate was required to show that had there been no delay, the outcome would have been different.

The difficulty in requiring an inmate to show a harm caused by a delay in treatment is carefully explored Tenth Circuit in both *Mata* and *Sealock*. In these cases, inmates suffered

9

severe chest pains for an extended period of time without appropriate medical treatment. Each inmate ultimately was diagnosed as having suffered a heart attack. The Tenth Circuit recognized that although a serious medical need might have existed at the time of the occurrence, an inmate might not be able to plead or prove that the delay, itself, caused a substantial harm. The circuit then reasoned held that because the Eighth Amendment forbids the "unnecessary and wanton infliction of pain," a showing that these inmates suffered severe pain without appropriate medical attention was sufficient to satisfy the objective element. In short, both cases fairly stand for the proposition that it is not necessary for a detainee or inmate to show that a delay in care resulted in substantial harm in order to establish that he or she suffered a serious medical need if the detainee/inmate suffered serious pain at the time of the occurrence or during the period of delay.

Here, the parties agree that Mr. Crow suffered a broken foot which caused him serious pain both before and after he consulted with the specialist. That is sufficient to satisfy the objective element.

### 2. Subjective Indifference

The Sheriff's Office and Dr. Kaplan also argue that Mr. Crow has failed to come forward with evidence sufficient to establish subjective indifference. They note that Mr. Crow was promptly treated by jail medical staff following his injury, and they argue that he has not put forward any evidence that this treatment was inadequate or insufficient.

Again, the Sheriff's Office and Dr. Kaplan misunderstand the nature of the required showing. The subjective indifference element does not focus on whether the treatment was appropriate, but instead on the state of mind of the Defendants and what they did nor did not do in light of what they knew. Mr. Crow must come forward with evidence that shows that the

Sheriff's Office and Dr. Kaplan both "knew of" and "disregarded" a risk to Mr. Crow's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Assuming, without deciding, that knowledge by jail staff is imputable to the Sheriff's Office, there is evidence that both the Sheriff's Office and Dr. Kaplan knew of Mr. Crow's injury – a broken foot. There is no showing, however, that the Sheriff's Office or Dr. Kaplan knew of a risk that: (1) Mr. Crowe had suffered multiple fractures in his foot as compared to a single fracture; (2) that a physical examination Mr. Crowe by Dr. Kaplan was necessary to avoid this or some other risk; (3) or that there was a risk that if Mr. Crowe was not seen by a specialist within three days after the injury, that his treatment or recovery would be adversely affected. With the exception of the splint/boot, the treatment prescribed by the specialist was the same as that prescribed by Dr. Kaplan and provided by jail staff. Discovery of multiple fractures was not apparent in the x-ray or upon examination, but was discovered only by MRI performed by the specialist, and the existence of multiple fractures did not change the course of treatment. Indeed, the record suggests that Mr. Crowe received essentially the same treatment by the jail medical staff that he would have received had he met with specialist at an earlier time.

As to Mr. Crow's complaint that his pain was not adequately treated, there is no showing that he notified jail medical staff of in adequate pain management. His only reference to pain was in the kite that he submitted the second day following the injury. In it, he asked to see a specialist "about his foot and pain." As noted earlier, the parties agree that Mr. Crowe had pain after his injury and kite generally refers to that. But the request does not state how serious the pain was, that the pain medication was inadequate, nor does it contain a request for addition additional or different medication. Thus, the kite does not fairly put the Sheriff's Office on

11

notice that pain is an issue that must be addressed. As to Dr. Kaplan, it is not notice at all because there is no evidence that he ever received it.

The first evidence in the record that Mr. Crowe had an unaddressed pain issue is in his request for a prescription for narcotic medication from the specialist. This request was not made to the Sheriff's Office or Dr. Kaplan, so it was not direct notice to them of a pain issue. One might argue that the specialist's conversation with the deputy about pain medication might have been notice of a problem, but there is no evidence that the conversation was shared with others at the Sheriff's Office or with Dr. Kaplan. Furthermore, the specialist's decision not to prescribe narcotics fell within his discretion. His prescription of ibuprophen mirrors that made by Dr. Kaplan and there does not appear to be further complaint as to adequacy of pain control by Mr. Crowe, or a request for Dr. Kaplan or the Sheriff's Office to administer narcotics.

Thus, with regard to the existence of additional fractures in his foot and delay in seeking a specialist, Mr. Crowe has not identified any risk of which the Sheriff's Office or Dr. Kaplan was aware. In the absence of knowledge of a risk to Mr. Crow's health, Mr. Crow cannot establish that either the Sheriff's Office or Dr. Kaplan was deliberately indifferent.

The Court finds that the record fails to show that the Sheriff's Office or Dr. Kaplan had any knowledge of an issue with unaddressed pain. However, to the extent that Mr. Crowe's request of narcotics rises to the level of notification, it is limited to the specialist, and it falls within the category of a disagreement with course of treatment. Although the Court appreciates that Mr. Crow believes that the treatment he received was inadequate, and he may have enjoyed swifter attention or an earlier prescription for narcotic medication had he not been detained at the jail, inmates/detainees are not entitled to treatment according to their preferences. Instead, they are only constitutionally entitled to the medical care that is reasonably designed to meet their

health care needs. *Sherman*, 653 Fed. App'x at 587; *Chandler v. Rodriguez*, 74 Fed. App'x 1, 3 (10th Cir. 2003); *Riddle v. Mondragon*, 83 F.3d 1197, 1203 (10th Cir. 1996). Disagreement with the medical treatment prescribed or provided, alone, is insufficient to establish a deliberate indifference claim. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006); *Sherman v. Klenke*, 653 Fed. App'x 580, 586 (10th Cir. 2016). The Tenth Circuit has explained this principle at length:

> As for [the inmate's] allegations concerning [the prison doctor], the district court correctly observed that some allegations indicate not a lack of medical treatment, but a disagreement with [the prison doctor's] medical judgment in treating a condition with certain medications rather than others. For example, [the inmate] alleges that he was not given the medications he desired for his headaches; but he admits being given other medications, so his complaint amounts to merely a disagreement with [the prison doctor's] medical judgment concerning the most appropriate treatment. An Eighth Amendment violation requires both a sufficiently serious medical need and deliberate indifference by the health-care provider. Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation.

*Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010).

In this case, the undisputed facts establish that the jail staff and Dr. Kaplan addressed Mr. Crow's initial injury, provided facially-reasonable treatment (ibuprofen, ice, a wheelchair/crutches, and a lower bunk restriction) in response to the injury, ordered an x-ray, initial prescription and then an increase in pain medication, monitored the injury and referred him to a specialist who saw him within approximately 72 hours. The specialist ultimately ratified the protocol that had been previously imposed. Mr. Crow has not come forward with any evidence that the Sheriff's Office or Dr. Kaplan that they were aware of any risk associated with the treatment that was provided or that they ignored any request made by Mr. Crow or rejected a course of treatment that would have better addressed his medical needs. Accordingly, the Court concludes that Mr. Crow has not made a *prima facie* showing of subjective indifference to his medical needs by either the Sheriff's Office or Dr. Kaplan. Summary

13

judgment shall enter in favor of the Sheriff's Office and Dr. Kaplan on Mr. Crowe's deliberate indifference claims brought under 42 U.S.C. § 1983.

B.     **Remaining State Law Claims**

The Defendants also seek summary judgment on the remaining state law claims. Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if… the district court has dismissed all claims over which it has original jurisdiction…." When claims based on federal jurisdiction are resolved, the favored approach in the Tenth Circuit, absent compelling reasons to the contrary, is for a district court to remand or dismiss remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3) so that a state court can resolve them. *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995); *Smith v. City of Enid by and Through Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998).

The Court finds no compelling reasons to retain jurisdiction over Mr. Crow's state law claims. Indeed, at least some of Mr. Crow's state law claims involve novel legal theories unique to Colorado law – for example, interpretation of the Colorado Governmental Immunities Act, whether Mr. Crow's common law negligence claim is subject to the Colorado Premises Liability Act, and whether Colorado's corporate practice of medicine doctrine should apply to a doctor working in a jail or a prison. It is preferable that the Colorado state courts decide these issues of Colorado law.

Therefore, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise its jurisdiction with regard to Mr. Crow's state law claims. Those claims shall be dismissed without prejudice.

**ORDER**

For the foregoing reasons, the Court orders as follows. The Motion for Summary Judgment submitted by the Sheriff's Office and Dr. Kaplan (**#110**) is **GRANTED IN PART** and **DENIED AS MOOT IN PART**. Summary judgment is in favor of the Boulder County Sheriff's office and Dr. Kaplan and against Mr. Crow on his 42 U.S.C. §1983 Fourteenth Amendment deliberate indifference claims. There is no just reason to delay entry of final judgment on these claims, and therefore, final judgment shall enter on them pursuant to Fed. R. Civ. Pro. 54(b).

All remaining claims are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3). As such, the Motion for Summary Judgment submitted by Aramark (**#106**) is **DENIED AS MOOT**, as is the Joint Motion to Exclude Expert Testimony (**#108**). The Clerk shall close this case.

Dated this 28th day of March, 2018.

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
Chief United States District Judge